IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JON C. MINCHEW,
  Petitioner,

vs.             Case No.: 3:05cv272/LAC/EMT

WALTER A. McNEIL,[1]
  Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

  This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Doc. 10). Petitioner filed a reply (Doc. 15).

  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.  BACKGROUND AND PROCEDURAL HISTORY

  The relevant aspects of the procedural background of this case are undisputed and established by the state court record (Doc. 10). Petitioner was originally charged in the Circuit Court in and for Escambia County, Florida, with one count of burglary of an unoccupied dwelling, a second degree felony (*id*., Ex. A at 1). On October 10, 2002, Petitioner pleaded nolo contendere to the lesser offense of burglary of a structure, a third degree felony, pursuant to a written plea agreement (*id*.,

---

[1] Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

Ex. B). Defendant was sentenced in accordance with the terms of the plea agreement, which provided that Petitioner would be adjudicated guilty of the lesser offense and placed on two (2) years of felony probation (*id.*, Exs. B, C). The order of probation was filed with the clerk on October 10, 2002 (*id.*, Ex. C at 19–20).

On January 27, 2004, an affidavit for violation of probation ("VOP") was filed, alleging that Petitioner had violated condition five (5) of the terms of his probation as follows: "By failing to live and remain at liberty without violating any law, in that on or about December 28, 2003, in Escambia County, Florida, the aforesaid did unlawfully commit the offense of petit theft" (*id.*, Ex. D at 21). On February 19, 2004, a no bond VOP warrant was issued for Petitioner's arrest pursuant to the allegation in the VOP affidavit (*id.* at 22). On June 15, 2004, an evidentiary hearing on the alleged VOP was held (*id.*, Ex. F at 40–108). The trial court found Petitioner to be in violation of condition five (5) of his probation (*id.*, Ex. F at 108, 121). The same day, the trial court adjudged Petitioner guilty of violating his probation, and sentenced him to three years in state prison with pre-sentence jail credit for 121 days, pursuant to a sentencing scoresheet totaling 22.6 sentence points (*id.*, Ex. F at 121, Ex. G at 125–26; Doc. 1 at 1). On June 15, 2004, the trial court entered an order of revocation of Petitioner's probation (Doc. 10, Ex. I at 134).

Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (First DCA). Petitioner's appellate counsel filed a brief asserting that counsel was unable to make a good faith argument that reversible error occurred in the trial court, in accordance with <u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (*id.*, Ex. J). Petitioner filed a pro se initial brief on November 30, 2004 (*id.*, Ex. L). The appellate court affirmed the conviction and sentence per curiam without written opinion on March 15, 2005, with the mandate issuing April 12, 2005 (*id.*, Ex. M). <u>Brown v. State</u>, 896 So. 2d 750 (Fla. 1st DCA 2005) (Table). Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On May 5, 2005, Petitioner filed a pro se Motion for Mitigation of Sentence, pursuant to Rules 3.020, 3.060, and 3.800(c) of the Florida Rules of Criminal Procedure (*id.*, Ex. N at 25–30). The trial court denied the motion on May 16, 2005 (*id.*, Ex. N at 24).

Petitioner filed the instant habeas action on July 17, 2005 (Doc. 1). Respondent concedes that the petition is timely (Doc. 10 at 4).

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>   (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>   (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

>court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable

application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and

concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III. PETITIONER'S CLAIMS

A. <u>Claim one: "Double Jeopardy: My rights were violated under the laws of double jeopardy</u>."

Petitioner claims that the constitutional prohibition against double jeopardy was violated because he was tried twice for the same petit theft offense (Doc. 1 at 4). Petitioner states that he was acquitted by a jury on May 4, 2004, of the misdemeanor offense of petit theft (*id*.). Petitioner states that he was "brought to trial again on the same charge" on June 15, 2004, at the VOP hearing (*id*.). Petitioner states that, during the June (VOP) proceedings, the "judge stated on at least two occasions that it was a trial" (*id*.). Petitioner states, "No where on the papers I signed for probation, does it state I give up these rights" (*id*.).

Respondent asserts the defense of failure to exhaust (Doc. 10 at 6–10). Respondent additionally argues that even if Petitioner exhausted this claim, he is not entitled to relief (*id*. at 10–13).

In Petitioner's reply brief, he does not address Respondent's allegations that he failed to exhaust his state claims. Petitioner reiterates his original claim by stating that his double jeopardy rights were violated because he was tried twice for the same petit theft offense.

Regardless of whether Petitioner exhausted his double jeopardy claims in the state courts, his claims are without merit.[3] It is well established within Supreme Court jurisprudence that the

---

[3]The court may deny an application for writ of habeas corpus on the merits notwithstanding Petitioner's failure to exhaust his state court remedies. 28 U.S.C. § 2254(b)(2).

Case No. 3:05cv272/LAC/EMT

Double Jeopardy Clause bars multiple punishment and punishment which exceeds that permitted by law. Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983); North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed.2d 656 (1969). Moreover, the Double Jeopardy Clause respects a defendant's "legitimate expectations" as to the length of his sentence. United States v. DeFrancesco, 449 U.S. 117, 101 S. Ct. 426, 437–38, 66 L. Ed. 2d 328 (1980). A defendant who has been placed on probation or parole, however, has no legitimate expectation beyond that his ultimate sentence will not exceed that permitted by law if he is resentenced upon later revocation of the probation or parole. *Id.*, 449 U.S. at 437; *see also* United States v. Jones, 722 F.2d 632, 638 (11th Cir. 1983). It must be recognized, as discussed by the former Fifth Circuit, that:

> [i]n Roberts v. United States, 320 U.S. 264, 64 S. Ct. 113, 88 L. Ed. 41 (1943), the United States Supreme Court, interpreting the federal probation statute then in effect, held that a probationer's resentencing for violation of probation could not exceed the terms of the sentence originally imposed. In so holding, it limited its decision to construction of the federal statute and specifically declined to pass upon the constitutionality of resentencing a probation violator to a greater term than originally imposed. In the case before us, however, we are dealing with a state-created system of criminal procedure, one which presumably reflects the policies and directives of the state citizens as expressed through their elected representatives. Questions of interpretation of state statutes are within the special authority of the state supreme court, and our review is limited to the question of whether the state procedure passes constitutional muster.

Williams v. Wainwright, 650 F.2d 58, 61 (5th Cir. Jul. 6, 1981).[4] In Williams, the Former Fifth Circuit found no double jeopardy violation in the Florida statutory scheme which allows the sentencing court upon revoking a defendant's probation to impose any sentence which it might originally have imposed before placing the defendant on probation even if the length of the final sentence is an increase over that originally imposed. 650 F.2d at 61–62; *see also* Hudgins v. Wainwright, 530 F. Supp. 944 (S.D. Fla. 1981).

Finally, it is well established that because the standard of proof for a revocation hearing is by a preponderance of the evidence and the standard of proof for a jury trial is beyond a reasonable doubt, probation may be revoked based upon a new violation of the law even where the defendant has been acquitted of the new charge. *See*, *e.g.,* United States v. Teran, 98 F.3d 831 (5th Cir. 1996);

---

[4]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Case No. 3:05cv272/LAC/EMT

<u>Russ v. State</u>, 313 So.2d 758 (Fla. 1975); <u>Bond v. State</u>, 839 So.2d 853 (Fla. 1st DCA 2003).

In the instant case, Petitioner asserts he was tried twice for the petit theft offense, once at the trial on the petit theft charge which resulted in an acquittal, and again at the VOP hearing (Doc. 1 at 4). Petitioner misinterprets the basis for the VOP charge. The record demonstrates that the VOP warrant was issued due to Petitioner's failure to comply with the conditions of his probation, specifically, condition five (5) of the Judgment of Guilt and Placing Defendant on Probation which states: "You will live and remain at liberty without violating any law. A conviction in a court of law shall not be necessary in order for such a violation to constitute a violation of your probation." (*see* Doc. 10, Ex. I, Ex. C at 19). The fact that a jury determined that the state failed to prove <u>beyond a reasonable doubt</u> that Petitioner committed a petit theft did not preclude the VOP court from determining that the state proved <u>by a preponderance of the evidence</u> that Petitioner violated the law while he was on probation.

Additionally, Petitioner's VOP sentence did not exceed the sentence that originally might have been imposed on the third degree burglary charge. The maximum sentence that Petitioner could have received on the burglary charge was five (5) years in state prison (Doc. 10, Ex. B). Petitioner was aware that he could receive up to five (5) years in state prison if he violated the terms of his probation, as evidenced by his signature on the written plea agreement (*id*. at 12). Instead of imposing a prison sentence, the state court placed Petitioner on felony probation for two (2) years (*id*., Ex. B at 8). Upon determining that Petitioner violated the conditions of his probation, the state court sentenced him to three (3) years of incarceration with credit for 121 days of jail time (Doc. 10, Ex. F at 121). This sentence did not exceed the five-year sentence that could have been imposed on the original burglary conviction. Therefore, Petitioner is not entitled to federal relief based on his claim that the VOP conviction or sentence violated his double jeopardy rights.

> B.     <u>Claim two: "Due Process Violation: There was not sufficient evidence to find me guilty of a violation even at a preponderance of the evidence."</u>
>
>         <u>Claim three: "Due Process Violation: The physical evidence was not kept in a secure location and was accessible to at least fifteen people."</u>[5]

---

[5] For organizational purposes, the court will address these two claims together.

Petitioner contends his VOP conviction violated due process because there was insufficient evidence to support the conviction. He specifically alleges that the evidence was insufficient because there was a conflict in the testimony of state witnesses Sandy Turner ("Turner") and David Henry ("Henry"), and the physical evidence was not kept in a secure location (Doc. 1 at 4–5).

Respondent asserts the defense of failure to exhaust (Doc. 10 at 13–18, 20–25). Respondent additionally argues that even if Petitioner exhausted this claim, he is not entitled to relief (*id.* at 18–20, 25–26).

In his reply brief, Petitioner appears to claim that his due process rights were violated because the burden of proof at a VOP hearing is not the same standard as that of a jury trial, and he does not agree that the standards should be different (Doc. 15 at 2). Petitioner argues, "When a state sets its standards and or laws and then lowers its standards of procedures or laws for self benifit [sic] that that [sic] violates due process and or the defendants [sic] rights and show biasness [sic] and or partiality against the defendant and is a manifest of injustice." (*id.*). Additionally, Petitioner argues that "Evidence tampering was more than a mere possibility it is a fact." (Doc. 15 at 2–3). Petitioner also asserts that state witnesses at the jury trial for the misdemeanor petit theft offense testified that the cell phone clip, which Petitioner was accused of stealing, was identified by the brand-name "Belkin," while the cell phone clip that was admitted into evidence at the VOP hearing had no identifiable markings (*id.*).

Regardless of whether Petitioner exhausted his claims in state court, his claims are without merit. As an issue of federal law, Petitioner's claim derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict. In determining whether Petitioner's conviction was obtained with constitutionally infirm evidence, reference must be made to the evidence needed to convict under State law. Jackson v. Virginia, 443 U.S. 307, 324 & n.16, 99 S. Ct. 2781, 2792 n.16, 61 L. Ed. 2d 560 (1979). In order to support the revocation of probation, the State must prove that the defendant's violations were willful and substantial. Hanania v. State, 855 So.2d 92, 94 (Fla. 2d DCA 2003). The trial court must determine whether the violations were willful and substantial and supported by the greater weight of the evidence or, stated differently, whether the defendant made reasonable efforts to comply with the terms and conditions of probation. *See* State v. Carter, 835 So.2d 259, 261 (Fla. 2002); Davis v. State, 867 So.2d 608, 610

Page 10 of 15

(Fla. 2d DCA 2004). Just as a jury determines the credibility of the witnesses during a jury trial, the judge evaluates the credibility of witnesses in a VOP hearing. The court evaluates the evidence, both direct and circumstantial, in the light most favorable to the state, and credits every inference that could have been drawn in the state's favor. Fletcher v. Graham, No. 9:05cv1383/GLS/DRH, 2007 WL 2227505, at *5 (N.D.N.Y. July 31, 2007).

Petitioner was accused of switching his cell phone clip with a new cell phone clip in a Wal-Mart store without paying for the new clip. In the instant petition, Petitioner contends there was insufficient evidence to support the VOP because two (2) witnesses gave conflicting testimony and the physical evidence was not stored in a secure location. In support of his claim, Petitioner states that Turner testified that Henry, the store manager, asked Petitioner to give back the stolen item, but Henry testified that Turner asked Petitioner to give back the stolen item (Doc. 1 at 4–5).

Upon direct examination, Turner testified as follows:

Q [by the State]: Okay. What happened then?

A [Witness Turner]: When we brought him back to the office, I asked him — we laid the package down, and my manager asked him for our clip. And, at first, he told us that he didn't have a clip. He said that was his. And then Mr. Henry said, Well, explain why your clip is inside of our package. His cell phone said Body Glove on it. Our package had, you know, worn marks on it and it was really old.

(Doc. 10, Ex. F at 49). Upon direct examination, Henry testified as follows:

Q [by the State]: Okay. What did you observe with regard to a cell phone clip that was on Mr. Minchew's person?

A [by Witness Henry]: Well, what I saw was—when we pulled him in the office, she asked, you know, to give our clip back, and he said he didn't have it. And I looked at the package that she pulled out, and it happened to match the clip that he had, or in our package matched the phone case that was on his phone, and the clip that was attached to his phone matched the package that we  — carry.

(*id*., Ex. F at 65). Next, Petitioner states that although Turner testified that Wal-Mart has an evidence locker, Henry testified that the store has no place to store evidence. Upon cross-examination, Turner testified as follows:

Q [by Defense Counsel]: Okay. After Mr. Minchew was turned into custody, what did you do with the amplifier box and this packaging for the cell phone?

A [Witness Turner]: I stuck this in this box and put it in our evidence locker.

Q: You have a locker that you can lock?

> A: Yes. It's a drawer.

(*id.*, Ex. F. at 55). Upon cross-examination, Henry testified as follows:

> Q [by Defense Counsel]: And is there a particular place in the office that you would store these items?
>
> A [Witness Henry]: Just in her office. She doesn't have a shelf or anything.
>
> Q: Is there a secure safe or locker that y'all —
>
> A: The office is locked.
>
> Q: Okay. Who would have keys to that office?
>
> A: Any assistant, and then the loss prevention. Any salaried manager which is an assistant or above.
>
> Q: And how many people would that be at the Blue Angel Parkway store?
>
> A: Total, I believe there's probably — and I don't know for sure, but I'd estimate about fifteen.

(*id.*, Ex. F at 70–71). Upon review of the record, the court finds no merit to Petitioner's claims that there was insufficient evidence to support the VOP conviction. Although the court agrees with Petitioner's statement that there appears to be some conflict in the testimony regarding which Wal-Mart employee asked Petitioner to return the cell phone clip, and whether the store had secured storage for evidence, this evidence is not the sole basis for the trial court's determination that Petitioner violated the terms of his probation. First, both Turner and Henry testified that Petitioner admitted to stealing the cell phone clip (Doc. 10, Ex. F at 49, 65). Second, and more important, Turner gave an eyewitness account of Petitioner stealing the item (*id.*, at 44–61). Thus, the discrepancies in the testimony are inconsequential in light of the record as a whole. Furthermore, even though Petitioner alludes to the fact that the evidence may have been tampered with, the trial court weighed the credibility of the evidence and the witnesses and concluded that Petitioner violated the terms of his probation. Therefore, the undersigned concludes that the evidence, viewed in the light most favorable to the State, is sufficient to permit a judge to conclude by a preponderance of the evidence that Petitioner knowingly removed the cell phone clip from its package with the intent to either temporarily or permanently deprive Wal-Mart of the right to the property. Accordingly, Petitioner failed to establish a due process violation based upon insufficiency of the evidence.

     C.    <u>Claim four: "Due Process Violation: I did not have a fair hearing, and I feel that is obvious due to the Judge's actions, comments, speculation (questioning)."</u>

Petitioner claims the trial judge was biased in favor of the State because the judge made the statement, "I don't care if it's 3 o'clock in the morning, we're going to have this VOP today" (Doc. 1 at 5). Petitioner also claims the judge was biased and impartial because he questioned defense witnesses regarding the manner in which they posted Petitioner's bond.

Respondent asserts the defense of failure to exhaust (Doc. 10 at 27–28). Respondent additionally argues that even if Petitioner exhausted this claim, he is not entitled to relief (*id*. at 28–33).

In his reply brief, Petitioner reiterates the arguments from his initial brief that the trial judge was biased because he questioned witnesses about whether an experienced thief would know to remove the theft protection device from the stolen item so that the security gate would not make a noise when he exited the store (Doc. 15 at 3–4). Petitioner also states that the judge was biased because he continuously questioned defense witnesses regarding how they posted Petitioner's bond (*id*.). Finally, Petitioner asserts that the trial judge was biased because he ruled in favor of the State even though there was a direct conflict in the testimony of the witnesses (*id*. at 4).

It is well established that probationers are entitled to the due process guarantees of the Fourteenth Amendment. <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 93 S. Ct 1756, 36 L. Ed. 2d 656 (1973); <u>Morrissey v. Brewer</u>, 408 U.S.471, 484, 92 S.Ct. 2593, 2601, 33 L. Ed.2d. 484. In <u>Morrissey</u>, the Supreme Court set out the "minimum requirements of due process" applicable to parole revocation proceedings, including:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.

408 U.S. at 489, 92 S. Ct. at 2601. The Court emphasized, "there is no thought to equate [the revocation hearing] to a criminal prosecution in any sense. . . . [T]he process should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial. *Id*.

Indeed, all that is required is "an informal hearing structured to assure that the finding of a[n] [early release] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [releasee's] behavior." *Id.* In Gagnon, the Supreme Court concluded that the procedures outlined in Morrissey for parole revocation should also apply to probation proceedings. 411 U.S. at 782, 93 S. Ct. at 1759. With regard to the requirement of a "neutral and detached" hearing body, the Supreme Court has held that the Due Process Clause guarantees criminal defendants a right to a fair and an impartial judge who is neutral, detached, and free from 'actual bias.' In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 942 (1955); *see also* Bracy v. Gramley, 520 U.S. 899, 905–06, 117 S. Ct. 1793, 1794, 138 L. Ed. 2d. 97 (1997). However, both Florida and Federal courts agree that adverse judicial rulings are not an appropriate basis for finding that an otherwise valid conviction should be reversed pursuant to a judicial bias claim. *See* Suarez v. State, 95 Fla. 42, 115 So. 519 (Fla. 1928); Hope v. State, 449 So.2d 1315 (Fla. 2d DCA 1984). *See also* Christo v. Padgett, 223 F.3d 1324, 1334 (11th Cir. 2000) ("Neither a trial judge's comments on the lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias.") (quoting Hamm v. Members of the Bd. of Regents, 708 F.2d 647, 651 (11th Cir. 1983)).

Upon review of the record of the VOP hearing, the court does not find any evidence that the trial judge was biased against Petitioner. Petitioner's assertion that the trial judge was unfair because he stated that the VOP hearing would be resolved on the day the court had scheduled the hearing (June 15, 2004), even if they had to hold the hearing at 3 o'clock in the morning, is without merit (Doc. 10, Ex. F at 32–33). In fact, the original hearing time was set for 9:00 a.m., but because defense counsel had not had an opportunity to review the petit theft trial transcript with Petitioner, the court gave Petitioner an additional six (6) hours to review the transcript with defense counsel (*id.*, at 30–33). The record is clear that the trial court made the statement in an effort to ensure judicial efficiency, and there is no evidence in the record to indicate that the judge was biased toward the State because he made the statement. The record reflects that the trial judge was attempting to accommodate Petitioner's right to adequately prepare for the hearing by giving him additional time to confer with defense counsel (*id.*, at 30–35). Thus, the court finds that the trial judge's comment does not establish bias.

Additionally, the fact that the judge questioned the witnesses does not show that he was biased. Florida appellate courts have consistently upheld decisions in which the court questioned witnesses, as long as the questioning remained within certain perimeters in order to avoid the appearance of impropriety and the appearance that the court favors one party over another. As discussed by the Florida Fifth District Court:

> It is within the court's prerogative to question witnesses "when required by the interests of justice." § 90.615(2), Fla. Stat. (1997). Such questioning may be necessary, in the court's discretion to ascertain the truth, Watson v. State, 190 So.2d 161 (Fla. 1966), *cert. denied*, 389 U.S. 960, 19 L. Ed.2d 369, 88 S. Ct. 339 (1967), or to clarify an issue, Nichols v. State, 721 So.2d 807 (Fla. 5th DCA 1998), James v. State, 388 So.2d 35 (Fla. 5th DCA 1980). The court's examination of witnesses becomes an abuse of discretion "only when it appears that the judge departs from neutrality or expresses bias or prejudice in his comments in the presence of the jury." Watson, 190 So.2d at 165. Thus, a court must balance its sense of duty to assist the jury with the required duty to avoid the appearance of impropriety; that is, that the trial court favors one party over the other or favors one outcome over another.

Poe v.State, 746 So. 2d 1211, 1213–14 (Fla. 5th DCA 1999).

In the instant case, the record is clear that the court asked a limited number of questions to both state and defense witnesses. The court asked questions that were directly relevant to whether Petitioner stole the cell phone clip and questions which appear to have been asked in order to clarify certain issues. For example, the court asked the State witnesses whether the electronic security device would beep if someone were to exit the store without paying for an item as small as a cell phone clip (Doc. 10, Ex. F at 73–78). The trial court also asked whether the cell phone clip that Petitioner was accused of stealing could, theoretically, fit Petitioner's phone, even though his phone was not a "flip phone" (*id.,* Ex. F at 91–92, 94–95). The record is clear that the trial judge was not biased in favor of the State based on the questions he asked. Petitioner's primary defense throughout the VOP hearing was that he would not have a reason to steal the cell phone clip in question because that clip was attached to a "flip phone," and his phone was not that type of phone (*id*., Ex. F at 91).

After finding Petitioner guilty of violating his probation, a sentencing hearing was held in which the court questioned defense witnesses William Lee Cooper, Jr. and his wife Shirley Cooper, regarding the method in which they bonded Petitioner out of jail (Doc. 10, Ex. F at 116–20). This line of questioning does not indicate bias. The record is clear that the court asked the witnesses questions about the bail procedure to ascertain whether they were aware that homesteaded property

could not be forfeited, which was relevant to their testimony that they trusted Petitioner enough to "sign[] over [] property" (*id.*). In other words, if the witnesses knew that the property they pledged could not be forfeited, it would not matter whether they trusted Petitioner or not. However, despite the judge's suggestion to both witnesses that the property could not have been forfeited in the event of a bond violation, both witnesses indicated that they did not know that (both at the time of the sentencing hearing and at the time they pledged the property) (*id.*). The judge was within his rights to clarify this matter. Moreover, the judge's questioning ultimately clarified that both witnesses honestly believed they would have lost their property had Defendant fled or otherwise violated conditions of his bond, bolstering their testimony that they trusted Petitioner (*see id.*). Therefore, Petitioner's claim of judicial bias is without merit.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter A. McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this  9th  day of July 2008.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**